O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

JACK FOSTER,                          )    NO. CV 11-05181-MAN
                                      )
              Plaintiff,              )
                                      )    MEMORANDUM OPINION
         v.                           )
                                      )    AND ORDER
MICHAEL J. ASTRUE,                    )
Commissioner of Social Security,      )
                                      )
              Defendant.              )
_____)

    Plaintiff filed a Complaint on June 21, 2011, seeking review of the denial of plaintiff's application for a period of disability and disability insurance benefits ("DIB").  On August 26, 2011, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge.  The parties filed a Joint Stipulation on May 3, 2012, in which:  plaintiff seeks an order reversing the Commissioner's decision and remanding this case for the payment of benefits or, alternatively, for further administrative proceedings; and the Commissioner requests that his decision be affirmed or, alternatively, remanded for further administrative proceedings.
//

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

On October 12, 2007, plaintiff protectively filed an application for a period of disability and DIB. (Administrative Record ("A.R.") 23, 134.)  Plaintiff, who was born on April 15, 1957 (A.R. 72),[1] claims to have been disabled since April 7, 2007 (A.R. 23, 179), due to status post assault lumbar back pain, multilevel degenerative changes of the lumbar spine, hypertension, and hearing loss. (A.R. 23, 39-58, 72, 134, 179, 204, 241.)

After the Commissioner denied plaintiff's claim initially and upon reconsideration (A.R. 23, 74-77, 83-86), plaintiff requested a hearing (A.R. 87).  On September 28, 2009, plaintiff, who was represented by attorney Mark Tinnel, appeared and testified at a hearing before Administrative Law Judge Kevin M. McCormick (the "ALJ"). (A.R. 23, 36-71.)  Impartial medical expert Alanson A. Mason and vocational expert Susan L. Allison also testified. (*Id.*)  On December 23, 2009, the ALJ denied plaintiff's claim (A.R. 23-32), and the Appeals Council subsequently denied plaintiff's request for review of the ALJ's decision (A.R. 1-5).  That decision is now at issue in this action.

## SUMMARY OF ADMINISTRATIVE DECISION

The ALJ found that plaintiff met the insured status requirements of the Social Security Act through December 31, 2010. (A.R. 25.)  The ALJ also found that plaintiff has not engaged in substantial gainful

---

[1] On the alleged disability onset date, plaintiff was 49 years old, which is defined as a younger person. (20 C.F.R. § 404.1563.)

activity since April 07, 2007, the alleged onset date of his disability. (*Id.*)   The ALJ determined that plaintiff has the severe impairments of "status post assault lumbar back pain and multilevel degenerative changes of the lumbar spine." (A.R. 25, 27.)   He also determined that plaintiff's "hearing loss and hypertension are not medically determinable physical/medical impairments." (A.R. 28.)   The ALJ found that plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). (*Id.*)

After reviewing the record, the ALJ determined that plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b), with the following exceptions:

> [Plaintiff] is limited to lifting and/or carrying 20 lbs occasionally and 10 lbs frequently; standing and/or walking 6 hours total out of an 8-hour workday; sitting on an unlimited basis; climbing ramps or stairs occasionally; never climbing ladders, ropes or scaffolds; balancing, stooping, kneeling, crouching and crawling occasionally.   [Plaintiff] must also avoid all exposure to hazards, such as machinery and heights.

(A.R. 28.)

The ALJ concluded that plaintiff is "capable of performing his past relevant work in automobile sales and as a security guard and an

1    investigator."[2]   (A.R. 31-32.)   Accordingly, the ALJ concluded that
2    plaintiff has not been under a disability, as defined in the Social
3    Security Act, from April 07, 2007, through the date of his decision.
4    (A.R. 32.)

5

6                            **STANDARD OF REVIEW**

7

8        Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's
9    decision to determine whether it is free from legal error and supported
10   by substantial evidence in the record as a whole.  Orn v. Astrue, 495
11   F.3d 625, 630 (9th Cir. 2007).  Substantial evidence is "'such relevant
12   evidence as a reasonable mind might accept as adequate to support a
13   conclusion.'"  Id. (citation omitted).  The "evidence must be more than
14   a mere scintilla but not necessarily a preponderance."  Connett v.
15   Barnhart, 340 F.3d 871, 873 (9th Cir. 2003).  "While inferences from the
16   record can constitute substantial evidence, only those 'reasonably drawn
17   from the record' will suffice."  Widmark v. Barnhart, 454 F.3d 1063,
18   1066 (9th Cir. 2006)(citation omitted).

19

20       Although this Court cannot substitute its discretion for that of
21   the Commissioner, the Court nonetheless must review the record as a
22   whole, "weighing both the evidence that supports and the evidence that
23   detracts from the [Commissioner's] conclusion."  Desrosiers v. Sec'y of
24   Health and Hum. Servs., 846 F.2d 573, 576 (9th Cir. 1988); see also
25   Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  "The ALJ is

26   _____

27       [2]    In his decision, the ALJ noted that the vocational expert
     found that plaintiff has past relevant work as an automobile salesman,
28   security guard, delivery route driver, and investigator.  (A.R. 32.)

                                    4

responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. <u>Burch v. Barnhart</u>, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." <u>Orn</u>, 495 F.3d at 630; *see also* <u>Connett</u>, 340 F.3d at 874. The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880, 885 (9th Cir. 2006)(*quoting* <u>Stout v. Comm'r</u>, 454 F.3d 1050, 1055 (9th Cir. 2006)); *see also* <u>Burch</u>, 400 F.3d at 679.

**DISCUSSION**

Plaintiff claims that the ALJ: (1) improperly evaluated plaintiff's credibility; and (2) improperly assessed plaintiff's RFC. (Joint Stipulation ("Joint Stip.") at 3-5, 7-10.)

**I.   The ALJ Failed To Give Clear And Convincing Reasons To Support His Finding That Plaintiff Lacked Credibility.**

Once a disability claimant produces objective medical evidence of an underlying impairment that is reasonably likely to be the source of

5

claimant's subjective symptom(s), all subjective testimony as to the severity of the symptoms must be considered.  Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991); see also 20 C.F.R. § 404.1529(a) (explaining how pain and other symptoms are evaluated).  "[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each." Robbins, 466 F.3d at 883.  The factors to be considered in weighing a claimant's credibility include:  (1) the claimant's reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and his conduct; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains.  See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); see also 20 C.F.R. § 404.1529(c).


    The ALJ found that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (A.R. 29.)  Further, although the ALJ suspected that plaintiff underwent treatment for his impairments only to "generate evidence for [plaintiff]'s lawsuit against the government for assault" (A.R. 30-31.), the ALJ neither expressly found that plaintiff was malingering nor cited any evidence of malingering by plaintiff.  Accordingly, the ALJ's reason for rejecting plaintiff's credibility must be clear and convincing.

1    The ALJ stated that plaintiff's "statements concerning the
2    intensity, persistence and limiting effects of [his] symptoms are not
3    credible to the extent they are inconsistent with [the ALJ's RFC]
4    assessment." (A.R. 29.) Specifically, the ALJ found that plaintiff
5    lacked credibility because: (1) plaintiff's "relatively infrequent"
6    trips to the doctor "bear[] negatively" on his credibility; (2)
7    plaintiff "consciously attempted to portray limitations tha[t] are not
8    actually present in order to increase the chance of obtaining benefits;"
9    and (3) "repeated objective medical tests failed to show any significant
10   abnormalities." (A.R. 29-30.) None of these reasons is adequate to
11   support the ALJ's adverse credibility determination.

13   First, it is neither clear nor convincing that plaintiff's
14   "relatively infrequent" trips to the doctor "bear negatively" on his
15   credibility. In his decision, the ALJ characterized plaintiff's
16   treatment as "essentially routine." (A.R. 30.) The ALJ noted that
17   plaintiff "went to the emergency room back in October 2007 and then had
18   only a couple of visits with Dr. [Fred F.] Hafezi[, an orthopedist,]
19   resulting in conservative care, medications and facet block, all of
20   which took place immediately after [plaintiff]'s injury occurred."
21   (*Id.*) In addition, the ALJ noted that plaintiff "was discharged from
22   Dr. Hafezi's care," and that there is "no indication [plaintiff] has
23   been referred for physical therapy, pain management or any other
24   treatment for his reported complaints . . . ." (*Id.*)

26   This account of plaintiff's treatment history is misguided. As the
27   ALJ himself detailed, plaintiff first had x-rays of his spine back on
28   April 27, 2007. (A.R. 25.) Plaintiff presented to Dr. Hafezi for

7

orthopedic consultation on July 17, 2007, and again for two facet block procedures on August 15, 2007, and September 5, 2007.  (A.R. 26.) Plaintiff returned for an orthopedic evaluation on October 9, 2007, at which time Dr. Hafezi recommended "neuovasive [sic] discectomy and fusion" costing approximately $85,000. (A.R. 274.) Alternatively, Dr. Hafezi prescribed "conservative treatment" costing $15,000 annually, consisting of use of a TENS unit back brace, Vicodin tablets, as well as physical therapy, and delaying the interbody fusion until "funds are available." (A.R. 274-75.)  Thereafter, plaintiff was admitted to the emergency room at Citrus Valley Medical Center on October 15, 2007, and presented to Dr. Salvador Saldana for an MRI of the lumbar spine. (A.R. 26-27.) On October 29, 2007, plaintiff had another lumbar spine MRI. (A.R. 27.)  On April 2, 2008, plaintiff presented again to Dr. Hafezi for reevaluation, and he then underwent an additional MRI on May 3, 2008. (*Id.*)  At the hearing on September 29, 2009, plaintiff testified that, although Dr. Hafezi continued to provide plaintiff medication until two or three months prior to the hearing, plaintiff stopped treatment due to Dr. Hafezi's advice that "the only other thing he could do is operate." (A.R. 49.) As the ALJ noted, Dr. Hafezi opined that these operations would cost $100,000. (A.R. 27.)  Plaintiff further testified that he was "still trying to find other doctors [for] their opinion" (A.R. 49), he uses a cane for ambulation (A.R. 52), and he was still seeing a chiropractor for neck and back problems on the date of the hearing (A.R. 56) -- over two years and five months after plaintiff's initial x-rays were taken.

Thus, the ALJ's description of plaintiff's treatment -- as "relatively infrequent" and "essentially routine" -- is not convincing,

8

because the medical record shows that plaintiff's treatment was not insubstantial in time or cost. The ALJ's understatement of the treatment plaintiff actually received misstates the record and is improper. *See, e.g.*, <u>Reddick v. Chater</u>, 157 F.3d 715, 722-23 (9th Cir. 1998)(The ALJ erred in developing the evidentiary basis for his finding by not fully accounting for all evidence of record and by inaccurately paraphrasing portions of the record). In addition, the ALJ failed to articulate why the treatment plaintiff received is inconsistent with the opinions expressed by the medical expert. The ALJ's reliance on the purportedly minimal nature of plaintiff's treatment does not constitute a clear and convincing reason for finding that plaintiff lacked credibility.

Second, the assertion that plaintiff undermined his credibility by "consciously attempt[ing] to portray limitations tha[t] are not actually present in order to increase the chance of obtaining benefits" provides neither a clear nor convincing reason for finding that plaintiff lacks credibility. (A.R. 30.) The ALJ concluded that, because there was a "paucity of medical evidence" to corroborate plaintiff's hearing loss and because plaintiff reported neither "significant medical problems" nor "other injuries" upon visits to Drs. Holland and Hafezi, respectively, plaintiff's descriptions of his hearing loss are "inconsistent and unpersuasive" and "suggest that much of what [plaintiff] has alleged may be similarly unreliable." (*Id.*) In the parties' Joint Stipulation, however, plaintiff explains that he alleges a disability based on back impairment, not hearing loss, and he does not consider his hearing loss disabling, so "there would be no reason to

report this impairment to treating or examining physicians." (Joint Stip. at 10.)

While the Commissioner is correct that plaintiff's explanation "misses the thrust of the ALJ's findings" (Joint Stip. at 11), the ALJ's findings are themselves misplaced, because they rest on a non-existent, purported inconsistency. Plaintiff's treating orthopedist noted, in a July 17, 2007 initial consultation, that "patient has a pre-existing hearing loss." (A.R. 286.) In the questionnaire on which the ALJ relies (A.R. 30), in which plaintiff reported no "other injuries," plaintiff checked "yes" next to the field for "impaired hearing." (A.R. 292-93.) However, on the line above, plaintiff checked "no" next to the field for "ear disease," apparently indicating his belief that his hearing impairment is not a disease or injury for which disability benefits are warranted. (*Id*.) Therefore, plaintiff's failure to identify his hearing impairment as a "significant medical problem" when he went to the emergency room for treatment for lower back pain is not, as the ALJ finds (A.R. 30), of any significance.

Moreover, on October 25, 2007, only ten days after that emergency room visit, plaintiff's interviewer during a disability field report observed that plaintiff had difficulty hearing. The interviewer stated, "I had to speak extremely loud[ly] so that he would hear me." (A.R. 174-76.) During a subsequent disability field report on May 02, 2008, a different interviewer observed that plaintiff was "very hard of hearing on [the] left ear." (A.R. 191.) Finally, the ALJ's examination of plaintiff at the hearing was repeatedly paused, because plaintiff stated he could not hear the ALJ's questions. (A.R. 39-40, 42-43.)

Viewing the record as a whole, plaintiff's statements regarding his hearing loss are not inconsistent, and independent observers have witnessed his hearing difficulties.  The ALJ's finding that plaintiff has "consciously attempted to portray limitations that are not actually present" (A.R. 30) lacks any substantial evidentiary basis, and thus, it is not clear and convincing.

Third and finally, as no other clear and convincing reason to find plaintiff not credible exists, the ALJ's rejection of plaintiff's subjective symptoms on the ground that "repeated objective medical tests failed to show any significant abnormalities" (A.R. 30) is legally insufficient.  In drawing this conclusion, the ALJ noted that: medical tests revealed "only mild disc bulges with no herniated discs," "mild scoliosis," and "mild degenerative spur formation" (A.R. 29); and although plaintiff had decreased range of motion in his spine during his initial orthopedic consultation, objective medical tests showed normal mobility occurring throughout all segments of the lumbar spine (A.R. 30).  Even if the ALJ's appraisal of the objective medical evidence is correct, his conclusion as to its impact for purposes of plaintiff's credibility is not.

"'Excess pain' is, by definition, pain that is unsupported by objective medical findings." Cotton v. Bowen, 799 F.2d 1403, 1407 (9th Cir. 1986).  The ALJ specifically found that plaintiff's medically determinable impairments could be expected to cause the symptoms plaintiff alleges.  (A.R. 29.)  The ALJ, however, disputes that this same objective evidence could support plaintiff's claim as to the severity of his symptoms.

The ALJ's apparent belief that the severity of plaintiff's claimed pain could not be believed, absent clinical or diagnostic proof establishing the excess pain level claimed by plaintiff is misguided, because plaintiff is not required to produce objective medical evidence to support the severity of his asserted pain or symptoms.  The failure of the medical record to corroborate a claimant's subjective symptom testimony is not, by itself, a legally sufficient basis for rejecting such testimony.  Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001); Bunnell, 947 F.2d at 347 (noting that "[i]f an adjudicator could reject a claim of disability simply because a claimant fails to produce evidence supporting the severity of the pain there would be no reason for an adjudicator to consider anything other than medical findings").  Thus, the ALJ's finding that the objective medical evidence does not support the degree of pain asserted by plaintiff cannot, by itself, constitute a clear and convincing reason for discrediting plaintiff's testimony.  See Varney v. Secretary, 846. F.2d 581, 584 (9th Cir. 1998); Cotton, 199 F.2d at 1407; see also Burch, 400 F.3d at 681.

The ALJ failed to give clear and convincing reasons for discrediting plaintiff's testimony, for the reasons set forth above.  Accordingly, the ALJ's adverse credibility determination constitutes reversible error.

**II.  On Remand, The ALJ Should Revisit His RFC Assessment In View Of The Various Medical Opinions.**

It is the responsibility of the ALJ to analyze evidence and resolve conflicts in medical testimony.  Magallanes v. Bowen, 881 F.2d 747, 750

12

(9th Cir. 1989).   In the hierarchy of physician opinions considered in assessing a social security claim, "[g]enerally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's."   Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. § 404.1527(d).   Additionally, the opinion of a specialist about medical issues related to his or her area of specialty generally receives more weight than the opinion of a source who is not a specialist.   20 C.F.R. § 404.1527(c)(5).

The opinions of treating physicians are entitled to the greatest weight, because the treating physician is hired to cure and has a better opportunity to observe the claimant.   Magallanes, 881 F.2d at 751.   When a treating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons.   Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995)(as amended).   When contradicted by another doctor, a treating physician's opinion may only be rejected if the ALJ provides "specific and legitimate" reasons supported by substantial evidence in the record.   Id.

"The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of . . . a treating physician."   Lester, 81 F.3d at 831; see Pitzer v. Sullivan, 908 F.2d 502, 506 n.4 (9th Cir. 1990)(finding that the nonexamining physician's opinion "with nothing more" did not constitute substantial evidence).   However, "[w]here the opinion of the claimant's treating physician is contradicted, and the opinion of a nontreating source is based on independent clinical findings that differ

13

from those of the treating physician, the opinion of the nontreating source may itself be substantial evidence." Andrews, 53 F.3d at 1041. Independent clinical findings include "(1) diagnoses that differ from those offered by another physician and that are supported by substantial evidence, or (2) findings based on objective medical tests that the treating physician has not herself considered." Orn, 495 F.3d at 632 (internal citations omitted).

On July 7, 2007, approximately three months after plaintiff's allegedly disabling assault, orthopedist Fred Hafezi, M.D. began treating plaintiff. (A.R. 270.) In a July 17, 2007 initial examination, Dr. Hafezi noted that, stemming from the assault, plaintiff suffered from "lumbago and transverse low back pain radiating to the left gluteal fold." (A.R. 286.) A cervical spine examination of plaintiff by Dr. Hafezi revealed that plaintiff had: (1) lateral flexion on the right at 15 degrees, and on the left at 10 degrees; (2) rotation on the right side of 70 degrees, and on the left of 60 degrees; (3) normal cervical lordosis; (4) nontender cervical spine median and paramedian structures; and (5) supple and nontender paracervical muscles. (A.R. 287.) Dr. Hafezi's lumbar spine examination revealed severe tenderness of the lumbosacral and L4/5 junctions, as well as moderate tenderness in the paraxial structures corresponding to the L3/4, L4/5, and L5/S1 joints. (*Id*.) Furthermore, orthopedic x-rays showed "facet irregularity of the L5/S1 segment with rotatory subluxation compatible with a torsional back motion injury." (A.R. 288.) Based on his physical examination of plaintiff and review of plaintiff's x-rays, Dr. Hafezi diagnosed plaintiff with, *inter alia*, "facet syndrome lumbosacral spine," "chronic myoligamentous sprain

lumbosacral spine," and "probable central herniation of fourth and fifth lumbar spine." (*Id.*) Dr. Hafezi ordered an MRI of the lumbosacral spine and a rigid back brace for plaintiff, and directed plaintiff to continue chiropractic and physical therapy treatment to his low back for three to six months. (A.R. 288-89.)

Dr. Hafezi then performed facet block procedures on plaintiff on August 15, 2007, and September 05, 2007, which provided plaintiff with some pain relief. (A.R. 270, 276, 278.) Concurrently with the second procedure, Dr. Hafezi renewed plaintiff's Vicodin medication. (A.R. 279.)

On October 9, 2007, upon final orthopedic evaluation and discharge by Dr. Hafezi, plaintiff "continue[d] to complain of aching pain in his low back where a crouched posture occurs frequently, and is only relieved by Codeine tablets whose analgesic effect lasts only four hours." (A.R. 273.) Although Dr. Hafezi's lumbar spine examination showed a normal gait, severe tenderness overlaid the L4/5 interspace and slight tenderness overlaid the L5/S1 interspace. (*Id.*) Dr. Hafezi's final diagnosis included "[p]ost traumatic rotary subluxation of L5/S1 facet joint," and "[s]evere myoligamentous chronic sprain lumbosacral spine." (A.R. 274.) Dr. Hafezi also remained "highly suspicious of a herniated or ruptured disc." (*Id.*) At that time, Dr. Hafezi opined "[t]he complexity of [plaintiff's] low back injury . . . in all probability will require one level neuovasive [sic] discectomy and fusion at the L4/5 level to relieve his back pain." (*Id.*) Dr. Hafezi then sent plaintiff to Salvador Saldana, M.D., a chiropractor, for further treatment and an MRI. (A.R. 275.)

In the interim, however, plaintiff was admitted to the emergency room at Citrus Valley Medical Center on October 15, 2007, with complaints of lower back pain.  J. Paul Holland, M.D. examined plaintiff's lumbar spine and found "mild multilevel degenerative changes most severe at the level of L4-5 which demonstrates a disc bulge and ligamentum flavum hypertrophy with mild spinal canal stenosis." (A.R. 241.) Dr. Holland instructed plaintiff "to continue his pain medication as per his primary doctor," "not to do any heavy lifting over 20 pounds," and "to avoid repetitive bending or stooping." (A.R. 224.)

On October 29, 2007, plaintiff underwent an MRI.  Dr. Saldana, a chiropractor, found normal intervertebral disc space and no evidence of herniation or bulge. (A.R. 244.)

On the basis of the medical evidence available as of January 2008, Dr. Earl Cooper, the State Agency non-examining physician, opined that plaintiff could stand and/or walk 6 hours total per 8-hour workday. (A.R. 249.)  Dr. Cooper noted that the file he reviewed did not include any treating or examining source statements regarding plaintiff's physical capacities.  (A.R. 252.)  On the basis of Dr. Cooper's evaluation, Monica Torres, a State Agency counselor, determined on January 16, 2008, that plaintiff retained the RFC to perform light work. (A.R. 253-55.)

Plaintiff returned to Dr. Hafezi for orthopedic re-evaluation on April 2, 2008.  Dr. Hafezi's lumbar spine examination revealed: (1) "hyperesthesia over the coccygeal area"; (2) plaintiff "is in a crouched posture and cannot straighten up as his back has locked";

16

(3) focal severe tenderness in the L4/5 interspace, and to a lesser extent in the L5/S1 disc space; (4) "[n]o motion occurs through the lumbar spine, but only through the hip joints, on forward flexion of 60 degrees"; and (5) "paraxical facet joints are again tender as instability has set in." (A.R. 271.)  Orthopedic x-rays showed normal mobility occurring throughout all segments of the lumbar spine, lumbar lordosis and integrity of the disc spaces were maintained, and there was no spondylosis or fracturing. (*Id.*)  On the basis of this examination, Dr. Hafezi diagnosed plaintiff with "[p]rogressive spinal instability L4 to S1 with progressive disc herniation L4/5 and L5/S1," and "[p]osterior L5 and S1 radiculitis." (*Id.*)  Dr. Hafezi treated plaintiff with new medication -- a course of Parafon forte twice daily and Toradol 50 mg -- and opined that plaintiff's condition required two prosthetic disc insertions. (A.R. 272.)

An MRI taken May 3, 2008, showed alignment and lordosis maintained, no fracturing, and unremarkable conus and paravertebral musculature. (A.R. 264.)  The MRI did show, however, "1-2 mm posterior disc bulges at L4 through S1 without evidence of canal stenosis or neural foraminal narrowing." (A.R. 265.)

State Agency physician Rosa Halpern reviewed all the medical evidence in plaintiff's file on June 25, 2008, and affirmed the State's January 2008 RFC assessment that plaintiff is capable of performing light work. (A.R. 294-95, 254.)  Specifically, Dr. Halpern opined that plaintiff could perform occasional postural activities with no climbing of ladders, ropes, or scaffolds, and should avoid all exposure to hazards. (*Id.*)  However, Dr. Halpern did not opine as to any walking or

standing restrictions or the duration for which plaintiff could stand and/or walk during an 8-hour workday. (*Id.*)

At the hearing on September 28, 2009, the ALJ examined Alanson Mason, M.D., an orthopedic surgeon, who testified as a medical expert. (A.R. 58-64.) Based on plaintiff's entire medical record, Dr. Mason opined that plaintiff was capable of "standing and walking at least a total of two hours out of an eight-hour day." (A.R. 62.) On cross examination by plaintiff's attorney, Dr. Mason clarified that the two hour number "is a total." (A.R. 65.) Explaining why he believed plaintiff is limited to such walking and standing restrictions, Dr. Mason answered: "because he's been consistently [] complaining bitterly of pain, of severe pain. I think we have to consider in part that his disability is based upon pain, which cannot be measured." (A.R. 63.) Dr. Mason added that plaintiff's pain level is "inconsistent with any pathology that's been identified." (*Id.*)

The opinions of Drs. Cooper and Mason, both non-examining physicians, conflict as to plaintiff's RFC with respect to walking and standing restrictions. (A.R. 62, 249.) It was the duty of the ALJ to analyze the evidence and resolve this conflict in the medical testimony. Magallanes, 881 F.2d at 750. Furthermore, the vocational expert testified that plaintiff could perform his past work as an automobile salesperson, security guard, or investigator, *only* if he could stand and walk about six hours. (A.R. 66.) Thus, in large part, the ALJ's RFC assessment turned on the non-examining physicians' opinions as to plaintiff's walking and standing restrictions. On this point, any error by the ALJ would not be harmless because such an error would not be

18

1    inconsequential to the ultimate nondisability determination.  Robbins,
2    466 F.3d at 885.

4        The ALJ rejected Dr. Mason's assessment, which limited plaintiff to
5    standing or walking two hours out of an eight hour workday, stating,
6    "such an assessment is inconsistent with the objective medical
7    evidence."  (A.R. 31.)   The ALJ stated that "[n]o treating or non-
8    treating source limited the claimant to sedentary or less than the full
9    range of sedentary work."  (*Id*.)   Furthermore, the ALJ noted "[t]he
10   record does not contain any functional limitations imposed by any
11   treating sources inconsistent with those found by the [ALJ]."  (*Id*.)

13       This Court agrees with plaintiff that "the ALJ failed to set forth
14   legally sufficient reasons for rejecting the standing and walking
15   limitations imposed" by Dr. Mason.  (Joint Stip., 4.)   Unlike the State
16   Agency reviewing physicians, Dr. Mason is an orthopedic surgeon.  (A.R.
17   30.)   The opinion of a specialist about medical issues related to his
18   area of specialty generally receives more weight than the opinions of
19   non-specialist sources.  20 C.F.R. § 404.1527(c)(5).   Therefore, in
20   rejecting Dr. Mason's opinion, the ALJ was required to give specific and
21   legitimate reasons supported by substantial evidence in the record.
22   Lester, 81 F.3d at 830.

24       The ALJ's reason for rejecting Dr. Mason's opinion -- *to wit*, that
25   the medical evidence does not support the level of walking and standing
26   limitations to which Dr. Mason opined -- is not legitimate.  It is true
27   that no treating source limited plaintiff to sedentary or less than the
28   full range of light work, and that no treating source imposed any

functional limitations on plaintiff inconsistent with those found by the ALJ.  (A.R. 31.)  But those treating sources were never asked to provide such evaluations, and it is conceivable they might have agreed with Dr. Mason's assessment.  An ALJ "has a special duty to fully and fairly develop the record and to assure that claimant's interests are considered."  Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983).  If the ALJ thought he needed to know the basis of Dr. Mason's opinion -- and the fact the ALJ questioned Dr. Mason on his standing and walking assessment shows the ALJ did -- to evaluate his opinion, the ALJ had a duty to conduct an appropriate inquiry.  *See* Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996).

Accordingly, as this case is being remanded for the reasons set forth *supra*, the ALJ should revisit his consideration of the various medical opinions on remand.[3]  In so doing, the ALJ may determine that a consultative examination, based upon a *complete* review of the medical record, is appropriate under the circumstances.

**III. Remand Is Required.**

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000).  Where no useful purpose would be served by further administrative proceedings, or

---

[3]     In particular, the ALJ should develop the record further to resolve the conflict between the opinions contained in Dr. Mason's testimony and the opinions of the State Agency physicians. Specifically, the ALJ should try to obtain opinions from plaintiff's several treating physicians as to the appropriate walking and standing restrictions to be imposed based on plaintiff's impairment.

where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *Id.* at 1179 ("[T]he decision of whether to remand for further proceedings turns upon the likely utility of such proceedings."). However, where there are outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate. *Id.* at 1179-81.

Remand is the appropriate remedy to allow the ALJ the opportunity to remedy the above-mentioned deficiencies and errors. *See, e.g.,* Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004)(remand for further proceedings is appropriate if enhancement of the record would be useful); Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993)(ordering remand so that the ALJ could articulate specific and appropriate findings, if any existed, for rejecting the claimant's subjective symptom testimony). On remand, the ALJ must correct the above-mentioned deficiencies and errors and further develop the record as appropriate. After doing so, the ALJ may need to reassess plaintiff's RFC, in which case additional testimony from a vocational expert likely will be needed to determine what work, if any, plaintiff can perform.

///
///
///
///
///
///
///

1

**CONCLUSION**

2

3        Accordingly, for the reasons stated above, IT IS ORDERED that the

4    decision of the Commissioner is REVERSED, and this case is REMANDED for

5    further proceedings consistent with this Memorandum Opinion and Order.

6

7        IT IS FURTHER ORDERED that the Clerk of the Court shall serve

8    copies of this Memorandum Opinion and Order and the Judgment on counsel

9    for plaintiff and for defendant.

10

11       **LET JUDGMENT BE ENTERED ACCORDINGLY.**

12

13   DATED:   July 23, 2012

14

15                                      _____

16                                           MARGARET A. NAGLE
                                        UNITED STATES MAGISTRATE JUDGE

17

18

19

20

21

22

23

24

25

26

27

28